IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC DAWSON, ) | |
| ) | |
| Plaintiff–Counterclaim Defendant, ) | |
| ) | |
| v. ) | Civil Action No. 13-0614-KD-M |
| ) | |
| AMERITOX, LTD., ) | |
| ) | |
| Defendant–Counterclaim Plaintiff. ) | |

## ORDER

This action is before the Court on Defendant Ameritox, Ltd's (Ameritox) motion for a preliminary injunction and memorandum in support (docs. 4, 5); plaintiff Eric Dawson's motion to dissolve the temporary restraining order, memorandum, and evidence in support (docs. 26-28); and Ameritox's supplemental brief in support of the motion for preliminary injunction (doc. 29). Upon consideration of the pleadings and the documents, the motion for preliminary injunction is DENIED, in part, to the extent that Dr. Dawson is enjoined from performing any services for any competitor of Ameritox, including Millennium Laboratories, Inc. Accordingly, the hearing on the motion for preliminary injunction, presently set for January 8, 2014 is cancelled.

I. Background

Ameritox provides specialized services for health care providers nationwide including medication testing, medication monitoring, laboratory services, and management tools for patient care. Dr. Dawson, a licensed Doctor of Pharmacy, and Ameritox negotiated his employment with Ameritox as its "Assistant Director, Medical Science and Health Outcomes Research" with a "Start Date" of "April 11, 2011". (Doc. 26-5, Ameritox internal

email; Doc. 1, p. 40, Letter from Ameritox to Dr. Dawson dated March 29, 2011 and confirming the state date)  On March 29, 2011, Dr. Dawson signed a one-paragraph agreement wherein he agreed that during his employment with Ameritox and for one-year thereafter, he would not solicit, entice, induce or approach Ameritox clients within the state of Maryland to become clients for any other company with respect to products or services sold or under development by Ameritox, or to reduce or cease doing business with Ameritox, and would not authorize or assist such actions by any other person.   He also agreed not to solicit or recruit Ameritox's former or current employees to work for a third party or engage in activity that would violate any agreement with Ameritox. (Doc. 1, p. 18)

Later, on April 7, 2011, Dr. Dawson signed a two-page Confidentiality and Noncompetition Agreement. (Doc. 5, p. 52-53)   Again, he agreed not to solicit or approach Ameritox clients to become clients for any other company. (*Id.*, ¶2(i))  However, the scope widened to include the United States.  Again, he agreed not to solicit or recruit Ameritox's former or current employees. (*Id.*, ¶2(i))  Importantly, he also agreed that during his employment and for one-year thereafter, he would not, as an

> employee . . . of any company or other commercial enterprise, directly or indirectly engage in any business or other activity in the United States or Canada which is competitive with or render services to any firm or business organization which competes with Ameritox in any activity in which I was directly involved while engaged by Ameritox or any similar services being provided by Ameritox at the time of termination of such employment.

(*Id.*, ¶2(iii)).

The Agreement also contained a clause wherein Dr. Dawson acknowledged that he would have access to confidential information and agreed not to disclose, use or exploit any

2

confidential information obtained during his employment. Specifically, Dr. Dawson agreed that:

> During and after my employment, I will not (i) use or exploit in any manner the Confidential Information for myself or any person, partnership, association, corporation or other entity other than Ameritox, or (ii) remove any Confidential Information, or any reproduction thereof, form the possession or control of Ameritox.

(*Id.,* ¶3)

Dr. Dawson's first day of work at Ameritox was Monday, April 11, 2011. (Doc. 1, p. 40) During his employment, Dr. Dawson worked as a liaison between Ameritox customers and its medical department and laboratory. (Doc. 1, p. 26, Declaration by Kathryn Bronstein, Vice President of Medical Affairs at Ameritox). He had access to confidential and sensitive business information regarding Ameritox's Rx Guardian CD database which allows it to provide services to health care provider customers and regarding Ameritox's strategic business projects related to genetic and mental health testing protocols and plans for expansion. (*Id.*, p. 26-27). On December 3, 2013, Dr. Dawson resigned to take a position as National Director of Clinical Affairs with Millennium Laboratories, Inc., (Millennium) a direct competitor of Ameritox. (Doc. 1, p. 32, email from Dr. Dawson to Bronstein)

After notice from Ameritox of its position that he was in violation of the Agreement, Dr. Dawson filed a complaint for declaratory judgment in the Circuit Court of Mobile County, Alabama, seeking a declaration that his employment was not in violation of the Agreement or that the Agreement was not enforceable. Ameritox removed the action to this Court and, upon information that Dr. Dawson would begin work with the competitor Millennium on December 19, 2013, filed its motion for temporary restraining order and

preliminary injunction, answer and counterclaim, and motion for expedited discovery. A temporary restraining order was entered on December 20, 2013.

II. Preliminary injunction

A. Statement of the law

"A district court may grant [preliminary] injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*); *accord Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–1226 (11th Cir. 2005) (*per curiam*); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989) (quotation marks omitted). Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits. *See, e.g., Schiavo*, 403 F.3d at 1226 n. 2, 1237; *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987).

*American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)

B. Elements

1. Substantial likelihood of success on the merits

Ameritox asserts that Dr. Dawson's non-compete agreement prevents Dr. Dawson from working for Millennium in <u>any</u> capacity. Dr. Dawson responds that the non-compete agreement is void under Alabama law for two reasons: 1) Non-competes of professionals,

4

like Dr. Dawson, are prohibited by Alabama law; and 2) Pre-employment non-compete agreements, like the one Dr. Dawson signed, are void under § 8-1-1 Alabama Code 1975.[1]

The Court agrees that the non-compete agreement is void because it was signed prior to his employment with Ameritox. In *Pitney Bowes, Inc. v. Berney Office Solutions*, 823 So.2d 659 (Ala. 2001), the Court stated that the "employee-employer exception to the voidness of noncompete agreements [§ 8-1-1(b)] does not save a noncompete agreement unless the employee-employer relationship exists *at the time the agreement is executed*." *Id*., at 662 (italics in original) (citation omitted).

Ameritox attempts to avoid the holding of *Pitney Bowes* with two arguments. At the TRO hearing, Ameritox argued that *Pitney Bowes* was distinguishable because § 8-1-1 was only applicable to merger situations. Ameritox has provided no authority for this proposition. The argument is not persuasive as there is no indication from the plain language of § 8-1-1 that it was meant to be limited to only mergers.

Ameritox also contends that § 8-1-1 does not apply to contracts which only partially restrain trade.[2] Ameritox states that Dr. Dawson's pre-employment contract is only a partial restraint of trade. Specifically, Ameritox argues that because Dr. Dawson could work in other capacities as a pharmacist, banning him from the specialty that he has

---

[1] Although Maryland law applies pursuant to the non-compete agreement, Ameritox does not contest that the agreement is void if it violates public policy as set forth under Alabama law. *See Ex parte Howell Engineering and Surveying, Inc.,* 981 So.2d 413, 419 (Ala. 2006) ("Section 8–1–1 expresses the public policy of this State as to contracts restraining employment.") (citing *Clark Substations, L.L.C. v. Ware,* 838 So.2d 360, 363 (Ala.2002)).

[2] The Court notes that the non-compete agreement in *Pitney Bowes* was less a restraint on trade than Dr. Dawson's non-compete agreement. However, the court still applied § 8-1-1 to find it void. 823 So. 2d at 661.

5

pursued over the last two years (clinical drug-testing and medical monitoring) only partially restrains Dr. Dawson's trade.

First, it is not likely that Dr. Dawson's non-compete agreement, which prevents him from working in any capacity with Millennium anywhere in the United State or Canada, could be considered a partial restraint of trade. The case relied upon by Ameritox for this proposition, *Akzo Nobel Coatings, Inc. v. Color & Equipment, LLC*, 451 F. Appx. 823 (11th Cir. 2011),[3] is readily distinguishable. In *Akzo*, Martin, an independent contractor who sold automobile paint, had signed a one-year non-compete with Akzo. Martin terminated his contract with Akzo and wanted to sell a competitor's paint. The court, relying on the fact that Martin was allowed to sell Akzo paint during the one-year non-compete period, determined that the non-compete was not a "substantial limitation upon Martin's opportunity to continue the same business he previously pursued." *Id*., at 825. Thus, not only was Martin not an employee, which as explained below subjects the agreement to the restrictions of § 8-1-1, Martin was allowed to continue his <u>same</u> business.

However, the Court need not decide whether the non-compete agreement is a partial restraint of trade because such a determination is of no consequence to the conclusion. Section 8-1-1 applies to an <u>employee's</u> non-compete agreement whether that agreement is a partial or total restraint of trade. In fact, it is § 8-1-1 which allows for partial restraint of trade agreements with employees.

---

[3] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. Rule 36-2 of the United States Court of Appeal for the Eleventh Circuit.

6

Ameritox's argument to the contrary is based primarily on *Ex parte Howell Engineering and Surveying, Inc.*, 981 So. 2d 413 (Ala. 2006). In *Howell,* the Court considered whether a no-hire agreement between employers violated § 8-1-1. The Court determined that because the agreement was only a partial restraint of trade, it was "not void under § 8-1-1 even [though there was] no corollary noncompetition agreement with an employee...." *Id*., at 422-423. The Court also stated that "to the extent *Dyson, Defco*, and *Sevier,* conflict with this opinion, they are hereby overruled." *Id*., at 423. The *Howell* opinion was based on the decision in *Southeast Cancer Network, P.C. v. DCH Healthcare Authority,* 869 So. 2d 452 (Ala.2003).[4] A review of the cases on which the *Howell* Court relied is necessary to put the issue in context.

*Dyson Conveyor Maintenance, Inc. v. Young & Vann Supply Co.*, 529 So.2d 212 (Ala.1988) and *Defco, Inc. v. Decatur Cylinder, Inc.,* 595 So.2d 1329 (Ala.1992) both involved a no-hire provision between employers. The Court held the no-hire provisions void because there was no underlying employer - employee non-compete agreement that complied with § 8-1-1. Then, in *Southeast Cancer*, the Court held that an agreement for the exclusive practice of oncology at DCH Hospital between DCH and Oncology Associates, did not restrain Southeast Cancer, or its employees, "in a manner that violates § 8-1-1, Ala. Code 1975." *Id.*, at 458.

The difference between the conclusions of *Dyson/Delco* and *Southeast Cancer* was that *Southeast Cancer* allowed the agreement, which was determined to be only a partial

---

[4] In *Southeast Cancer*, Oncology Associates had an exclusive contract to practice oncology at DCH Hospital. Southeast Cancer was not allowed to practice oncology at the hospital. Southeast Cancer sued the hospital and alleged that the contract between Oncology Associates and DCH violated § 8-1-1.

7

restraint of trade, without consideration of whether there was an underlying employer – employee non-compete agreement that complied with § 8-1-1. Rather, unlike *Dyson/Delco*, *Southeast Cancer* examined whether the exclusivity agreement itself violated the principles of § 8-1-1.

Previously, in *Sevier Insurance Agency, Inc. v. Willis Corroon Corp. of Birmingham*, 711 So. 2d 995 (Ala. 1998), the Court considered whether a non-solicitation agreement between an employer/employee was valid under § 8-1-1. In the opinion, the Court acknowledged a conflict in case law as to whether non-solicitation agreements (in addition to non-compete agreements) were governed by § 8-1-1. The Court held that because non-solicitation agreements between an employer/employee restrains trade, § 8-1-1 applies. The Court also broadly stated that, "'partial restraint of trade' is subject to § 8-1-1, but will be upheld when it is properly restricted as to territory, time and persons and where it is supported by sufficient consideration." *Id.*, at 999.

Thus, when the *Howell* case was considered there was arguably conflicting precedent regarding when a contract that partially restrains trade implicates § 8-1-1. *Dyson/Defco* prohibited any type of contract that partially restrained trade unless the employee/individual affected had signed a non-compete that complied with § 8-1-1. *Southeast Cancer* allowed a contract that partially restrained trade, and indicated that § 8-1-1 was not implicated because "DCH and Oncology Associates' agreement does not on its face prohibit Southeast's physicians—who are not parties to the agreement—from practicing oncology". *Southeast Cancer*, 869 So. 2d at 457. *Sevier*, which did not otherwise discuss partial restraint of trade contracts outside the employer-employee context, seemingly held that all partial restraint of trade contracts were subject to § 8-1-1.

8

As previously stated, *Howell* overruled *Dyson*, *Defco*, and *Sevier* to the extent they were inconsistent with *Howell*. Thus, the context of *Howell* is crucial to understand what was overruled. *Howell* involved a no-hire agreement between employers, not an agreement between an employee/employer. *Howell* made clear that no-hire agreements between employers did not run afoul of § 8-1-1. *Howell* did not address partial restraint in the context of employee-employer agreements. Thus, the Court is not convinced that *Howell* counsels that employee non-compete agreements, that only partially restrain trade, are exempt from the restrictions of § 8-1-1.

As stated in *Sevier*, "[i]t would make no sense for the Legislature to draft an exception … but not intend for either the statute or the exception to apply…." 711 So. 2d at 1000. Section 8-1-1 clearly applies to non-compete agreements between employers-employees and provides for an exception to their voidness if the non-compete agreement only restrains trade within a certain territory, *i.e.*, partially. The extent of restraint of trade allowed is defined by the exception; employees may agree to not engage in similar business or solicit old customers within a specified county, city or part thereof. Thus, it is nonsensical to say that § 8-1-1 does not apply to employee non-compete agreements that only partially restrain trade.

Thus, because § 8-1-1 is applicable to Dr. Dawson's non-compete agreement, it must be determined whether Dr. Dawson's non-compete violates § 8-1-1. As previously stated, *Pitney Bowes* answers this question. Non-compete agreements are valid only if signed by an employee. Prospective employment is not sufficient because a person that has been offered employment to begin in the future does not have an employer-employee

relationship. *Pitney Bowes,* 823 So. 2d at 662 ("Absent the employee-employer relationship when the agreement is executed, the agreement is void.") (citation omitted).

Accordingly, as to the enforceability of the non-compete agreement between Ameritox and Dr. Dawson, the Court finds that Ameritox does not have a substantial likelihood of succeeding on this breach of contract claim. Therefore, the Court finds that the Temporary Restraining Order should be terminated to the extent it prohibits Dr. Dawson from performing any services for any competitor of Ameritox, including Millennium Laboratories, Inc.

2. Remaining elements

Since Ameritox has failed to meet its burden as to the first of the four prerequisites for entry of a preliminary injunction, the Court need not address the remaining three.

C. Confidentiality provisions

The parties do not dispute that Dr. Dawson is subject to the confidentiality provisions of the employment agreement and that a preliminary injunction is appropriate as to those provisions. Therefore, it is ORDERED, ADJUDGED and DECREED as follows:

1. Dr. Dawson is enjoined from using or disclosing any of Ameritox's proprietary and/or confidential business information.

2. Dr. Dawson is directed to immediately return to Ameritox all Company documents and information, with the exception of documents and information pertaining to his personal compensation.

3. Dr. Dawson is enjoined from deleting, destroying, erasing, modifying, or otherwise altering any and all electronic media, including, but not limited to, work and personal e-mail accounts, external hard drives, thumb drives, or other portable media,

Dropbox accounts, network drives, computers, cellular phones, smart phones, and personal digital assistants, that have stored Ameritox's documents or information, or were used to transfer or temporarily store Ameritox's documents, data, or information, or that referred or related to Ameritox, Ameritox's business, Ameritox's employees or existing or prospective customers, or work completed to date, until such time that this Court gives him leave to so do.

    4. Dr. Dawson is directed to preserve all documents, data, and information pertaining to the offer of employment extended to him by Millennium, communications between Dr. Dawson and Millennium and/or with other individuals regarding his prospective employment and employment with Millennium, and communications between Dr. Dawson and Millennium and/or with other individuals regarding their knowledge of and/or access to Ameritox's confidential business or proprietary information.

    DONE this the 6th day of January 2014.

                                      s/ Kristi K. DuBose
                                      KRISTI K. DuBOSE
                                      UNITED STATES DISTRICT JUDGE